**NOT FOR PUBLICATION**

```
                          FILED
                   JAMES J. WALDRON, CLERK

                       JULY 27, 2009

                   U.S. BANKRUPTCY COURT
                       NEWARK, N.J.
                 BY:  s/ Ronnie Plasner, DEPUTY
```

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **In Re:**<br><br>**TARRAGON CORPORATION,** *et al.***,**<br><br>Debtors.<br><br>**TARRAGON CORPORATION and TARRAGON MANAGEMENT, INC.,**<br><br>Plaintiffs,<br><br>v.<br><br>**NORTHLAND PORTFOLIO, L.P., NORTHLAND FUND L.P., NORTHLAND FUND II L.P., NORTHLAND FUND III L.P., NORTHLAND INVESTMENT CORPORATION, NORTHLAND AUSTIN INVESTORS LLC, AUSTIN INVESTORS L.P., DRAKE INVESTORS L.P., TATSTONE INVESTORS, L.P., and NORTHLAND PROPERTIES MANAGEMENT, LLC.**<br><br>Defendants. | Case Nos.: 09-10555 (DHS)<br>**(Lead Case)**<br><br>Administratively Consolidated<br><br>Adv. No.   09-01469 (DHS)<br><br>Judge: Donald H. Steckroth, U.S.B.J.<br><br><br><br>**OPINION** |

**APPEARANCES:**

McCarter & English, LLP
Joseph Lubertazzi, Esq.
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
*Counsel to Defendants Northland Portfolio, L.P., et al.*

Cole, Schotz, Meisel, Forman & Leonard, P.A.
Michael D. Sirota, Esq.
Gerald H. Gline, Esq.
Court Plaza North, 25 Main Street, P.O. Box 800
Hackensack, New Jersey 07602-0800
*Counsel to Debtors/Plaintiffs Tarragon Corporation and Tarragon Management Inc.*

Forman Holt Eliades & Ravin LLC
Harry Gutfleish, Esq.
80 Route 4 East, Suite 290
Paramus, New Jersey 07652
*Counsel to the Official Committee of Unsecured Creditors*

**THE HONORABLE DONALD H. STECKROTH, BANKRUPTCY JUDGE**

Before the Court is Northland[1]'s motion to dismiss the adversary complaint filed by Tarragon Corporation and Tarragon Management, Inc. ("Tarragon" or "Debtors").[2] Northland moves to dismiss arguing that: (1) the "first-filed" doctrine warrants dismissal due to two pending state court actions already addressing the same issues and causes of action as the Debtors' adversary complaint; (2) this Court should exercise abstention; and (3) Tarragon has not followed the proper procedure for removal to a federal court. In opposition, Tarragon counters with the following: (1) the "first-filed" rule is inapplicable; (2) filed proofs of claim and pre-petition litigation makes this a core proceeding rendering mandatory abstention inappropriate; (3) Counts XVI and XVII of the Adversary Complaint are core bankruptcy issues; (4) permissive abstention is inappropriate; and (5) Tarragon's choice to not utilize removal procedures is irrelevant. On July 22, 2009, just prior to the instant motion being heard, Tarragon filed a motion to expunge the claims of Northland or in the alternative to consolidate the claims with the instant adversary proceeding in an effort to demonstrate the argued duplicative nature of the proofs of claim and the instant matter. The

---

[1] Northland, as used herein, refers to the following entities: Northland Portfolio, L.P., Northland Fund L.P., Northland Fund II L.P., Northland Fund III L.P., Northland Investment Corporation, Northland Austin Investors LLC, Austin Investors LLC, Austin Investors L.P., Drake Investors L.P., Tatstone Investors, L.P., and Northland Properties Management, LLC.

[2] This adversary proceeding was commenced by two of the jointly-administered Debtors in this case – Tarragon Corporation and Tarragon Management, Inc. ("TMI"). The jointly-administered Debtors are Tarragon Corporation, Tarragon Development Corporation, Tarragon South Development Corp., Tarragon Development Company LLC, Tarragon Management, Inc., Bermuda Island Tarragon LLC, Orion Towers Tarragon, LLP, Orlando Central Park Tarragon L.L.C., Fenwick Plantation Tarragon LLC, One Las Olas, Ltd., The Park Development West LLC, 800 Madison Street Urban Renewal, LLC, 900 Monroe Development LLC, Block 88 Development, LLC, Central Square Tarragon LLC, Charleston Tarragon Manager, LLC, Omni Equities Corporation, Tarragon Edgewater Associates, LLC, The Park Development East LLC, Vista Lakes Tarragon, LLC, Murfreesboro Gateway Properties, LLC, Tarragon Stonecrest, LLC, MSCP, Inc., Tarragon Stratford, Inc. and TDC Hanover Holdings LLC.

Debtors' motion is scheduled to be heard on September 10, 2009 and is not before the Court at this time.

Having reviewed the papers and having heard the arguments of counsel, the Court hereby denies Northland's motion to dismiss. The Court has jurisdiction over this motion pursuant to 28 U.S.C. § 1334 and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984.  This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (E). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

## Factual Background

On March 31, 2008, Northland, Tarragon, and Ansonia LLC ("Ansonia") entered into an Agreement to Contribute ("Contribution Agreement") whereby the parties agreed to contribute membership and limited partnership interests in various companies ("Contributed Companies") they owned to a separate company named Northland Properties LLC. *Compl., 09-01469 (DHS)*, *Mar. 30, 2009 ("Adv. Compl.")*, ¶¶ 18-19. Northland Properties LLC was created as a joint venture which would allow the parties to develop their respective businesses. *Id.* at ¶ 20.  The Contributed Companies own multi-unit residential real estate developments throughout the Northeast, Mid-Atlantic, Southeast and Southwest United States valued in excess of $2 billion at the time of the Contribution Agreement. *Id.* at ¶ 21.  Tarragon was to contribute membership interests in thirty (30) separate companies with a value in excess of $500 million ("Tarragon Properties"). *Id.* at ¶ 22.

Tarragon and Northland created Northland Properties Management, LLC ("NPM") to manage the Properties governed under the NPM Operating Agreement entered into on March 31, 2008. *Id.* at ¶¶ 23-24.  Northland and Tarragon executed an Interim Property Management

4

Agreement which would allow for NPM to provide property management services until the closing of the Contribution Agreement with the condition that the Interim Management Agreement would be terminated in the event that General Electric Capital Corporation ("GECC"), Tarragon's primary lender, did not consent to NPM's management of the Tarragon Properties. *Id.* at ¶¶ 26-27. The Contribution Agreement, Interim Management Agreement and NPM Operating Agreement are integrated contracts and will be collectively referred to as "Agreements". *Id.* at ¶ 28.

As a condition to the Contribution Agreement, Paragraphs 2.3(a) provided that Northland would allow Tarragon to participate in communications with Northland's lenders regarding the required consent of two-thirds (2/3) of Northland's mortgage holders. *Id.* at ¶¶ 29-36. Tarragon alleges that Northland failed to include it in telephonic or in-person meetings and failed to provide written correspondence between Northland and its lenders as it pertained to this required consent. *Id.*

Furthermore, GECC needed to consent to the Contribution Agreement. *Id*. at ¶ 37. As Tarragon's primary lender, GECC provided in excess of $400 million secured by Tarragon's Contributed Companies. *Id.* at 38. GECC had complete discretion with respect to this consent and was not involved in the negotiation of the Agreements. *Id.* at ¶ 41. Northland could only communicate with GECC if Tarragon participated, however, Northland contacted GECC unilaterally throughout May to August 2008. *Id.* at ¶¶ 42-43. The parties and their counsel communicated directly about Northland's contact. *Id*. at ¶¶ 48-50. Tarragon submits that this communication was a breach of the Communication Agreement and impacted its relationship with GECC. *Id.* at ¶ 51.

5

Northland allegedly refused to provide any financial records to Tarragon, despite a specific provision in the Contribution Agreement. *Id.* at ¶¶ 55-57. Instead, Northland provided this information directly to GECC and directed GECC not to forward it to Tarragon. *Id.* at ¶ 58. Northland also concealed certain material facts regarding employment of management of NPM. *Id.* at ¶¶ 63-65. Furthermore, Northland contracted to purchase $280 million of properties in Austin, Texas against the advice of Tarragon's Chief Executive Officer, William Friedman. *Id*. at ¶ 66. Additionally, Northland allegedly misrepresented the consent it had received from its lenders as the documentation provided did not evidence this consent. *Id.* at ¶ 62.

Northland also purportedly wrongfully terminated a contract with Tarragon for $42,500,000.00 ("Bermuda Island Contract") to purchase a 360 apartment complex in Naples, Florida known as Bermuda Island and thereafter commenced a lawsuit against Tarragon on August 4, 2008 in Massachusetts state court. *Id.* at ¶ 67; *Northland's Mot. to Dismiss the Compl. ("Northland Mot.")*, 2 . Northland Fund II agreed to assume the existing mortgage loan between Tarragon and its lender for this property. *Adv. Compl.* at ¶¶ 69-70. Tarragon agreed to extend the closing date several times to allow Northland time to finalize the transaction even though time was of the essence. *Id.* at ¶¶ 73-86. After this delay, Northland Fund II's Chief Executive Officer requested that the closing of the Bermuda Island Contract occur when the Contribution Agreement could be consummated. *Id.* at ¶ 87. Tarragon found this to be unacceptable as the Mortgage Loan had matured on April 1, 2008 and NPM was already providing services. *Id.* at ¶¶ 89-91. Although skeptical, Tarragon agreed to extend the closing to July 31, 2008 to provide Northland with more time. *Id.* at ¶ 95. Despite having Bank of America's approval and the closing documents in hand,

on July 31, 2008, Northland refused to close and asked for yet another extension. *Id.* at ¶ 98-100. On the same day, after Tarragon refused another extension, Northland notified Tarragon that it was terminating the contract because the consent of the lender was inadequate. *Id.* at ¶ 101.

On August 4, 2008, Northland Fund II commenced a lawsuit against Tarragon asserting breach of the Bermuda Island Contract claims despite Northland's termination of the same contract. *Id.* at ¶ 104. Northland did not disclose this lawsuit to GECC at the same time that GECC stated that it would provide a decision as to its consent. *Id.* at ¶ 105. Thereafter, on August 20, 2008, while the consent process was underway with GECC, Northland commenced a lawsuit in New York State against Tarragon and Ansonia for breach of the Contribution Agreement. *Id.* at ¶¶ 109-111 (*Commercial Part, Index No. 602425/08)* ("New York Litigation"). Tarragon alleges that these two lawsuits in addition to Northland's conduct with respect to its communication with GECC led to GECC's denial of consent. *Id.* at ¶¶ 112-115.

Tarragon believed that the Agreements with Northland would be a merger between Tarragon's property management and development expertise and Northland's real estate base providing economies of scale and improved utilization of resources. *Id.* at ¶¶ 116-118. Allegedly, Northland represented in business plans and budgets that Tarragon's CEO, William Friedman, and President, Robert Rothenberg, would be consulted in decision-making for the joint venture. *Id.* at ¶¶ 119-120. Rothenberg was also to oversee NPM. *Id.* at ¶ 117. Tarragon entered into the Agreements based upon these representations. *Id.* at ¶¶ 123-124. Allegedly, despite provisions in the Agreements, no board meetings of NPM have taken place, which was to be comprised of two Tarragon executives and two Northland executives, with the final member being selected by

Northland Investments. *Id.* at ¶¶ 127, 130-134. The final member had never been appointed. *Id.* at ¶ 129. Tarragon alleges that Northland has unilaterally operated and managed NPM. *Id.* at ¶135. For example, Northland removed Rothenberg without providing notice or a vote stating that Rothenberg did not have time. *Id.* at ¶¶ 136-137. Summarily, Tarragon argues that Northland made representations and then acted contrarily. *Id.* at ¶¶ 138-139.

Tarragon alleges that Northland directed NPM to refuse to acknowledge Tarragon's termination of the property management services on August 6, 2008 without board meeting or approval. *Id.* at ¶ 140. Tarragon argues that the Properties were held "hostage" for approximately one month, despite GECC's notice that it was denying consent on August 26, 2008. *Id.* at ¶¶ 141-143. Furthermore, Northland refused to acknowledge that the Contribution Agreement required an orderly wind-down and dissolution of NPM. *Id.* at ¶¶ 144-145. In the Agreements, Tarragon included provisions that would allow it to rehire its employees who went to work for NPM in the event of dissolution and Northland created obstacles to thwart Tarragon's efforts such as barring employees communication with Tarragon contrary to the terms of the Agreement. *Id.* at ¶¶ 146, 163-170. Northland also failed to provide financial information to Tarragon with respect to NPM. *Id.* at ¶ 148.

Upon GECC's denial of consent, the Interim Management Agreement terminated. *Id.* at ¶ 152. NPM refused to acknowledge the termination, failed to submit vendor invoices to Tarragon in a timely fashion, and failed to notify Tarragon of necessary repairs or capital improvements needed to be made on the Properties. *Id.* ¶¶ 152-154. On September 17, 2008, an Order was entered in the New York Litigation requiring turnover of the Properties to a property manager designated

by Tarragon within a week to ten days. *Id.* at ¶ 155. Northland responded with a letter stating conditions for turnover not included in the New York Court's order. *Id.* at ¶ 156. Tarragon reacquired control on September 26, 2008. *Id*. at ¶ 159.

Northland articulates in its motion that new bankruptcy causes of action were brought in the adversary complaint and not previously raised in the state court litigations. *Northland's Mot. to Dismiss the Compl. ("Northland Mot.")*, 5. With respect to these counts, Tarragon alleges that Northland wrongfully converted commission checks made payable to Tarragon. *Id*. at ¶ 171. Specifically, laundry sales commission checks were sent in December 2008 and January 2009 for approximately $46,000.00. *Id.* at ¶¶ 172-177. The checks were sent "c/o Northland Properties Mgmt." *Id.* at ¶ 178. A senior Northland employee confirmed that the checks were deposited into an NPM account. *Id.* at ¶ 180.

In its complaint, Tarragon raises the following counts: (1) breach of contract as to the Agreements; (2) breach of the covenant of good faith and fair dealing as to the Agreements; (3) fraud; (4) tortious interference with contract; (5) negligence; (6) defamation; (7) declaratory judgment; (8) breach of Bermuda Island Agreement; (9) breach of covenant of good faith and fair dealing as to the Bermuda Island Agreement; (10) tortious interference with Tarragon's business relationships; (11) conversion; (12) breach of contract as to the Services Agreement; (13) breach of contract as to the Barclay Agreement; (14); accounting as to NPM; (15) injury to business reputation; (16) turnover of property of the estate; and (17) intentional violations of the automatic stay.

Northland submits that the Massachusetts state court litigation has proceeded with Tarragon having answered the complaint and asserting a third-party complaint against Northland. *Northland Mot.*, 2; *Aff. of Meena Untawale in Supp. of Northland's Mot. ("Untawale Aff.")*, ¶¶ 3-4. A motion for summary judgment filed by Northland has been pending since November 12, 2008. *Id.* at ¶ 10. Tarragon filed an emergency motion for additional discovery which Northland opposed, and the Clerk established a discovery deadline of February 27, 2009. *Id.* at ¶¶ 11-13.

With respect to the New York Litigation, an Order to Show Cause was entered on August 20, 2008 to address the claims raised. *Id.* at ¶¶ 14-15; *Northland Mot.*, 3. The New York Court also directed Tarragon to take certain actions with respect to GECC on September 17, 2008. *Untawale Aff.*, at ¶ 15. Tarragon was required to turnover $406,713.67 in security deposits and property on November 17, 2008. *Id.* at ¶ 16. On December 2, 2008, the New York Court severed the action as to Friedman and Rothenberg. *Id.* at ¶ 17. Tarragon responds stating that "severing" is a misnomer and that the case was dismissed as to Friedman and Rothenberg. *Tarragon's Opp. to Mot. to Dismiss ("Tarragon Opp.)"*, ¶¶ 33-34 Northland also filed a Second Amended Complaint and Tarragon filed a Verified Answer to this complaint. *Northland Mot.*, 3. Tarragon states that Northland has not yet answered the counterclaim raised and parties have not exchanged any written discovery. *Tarragon Opp.* at ¶ 29. The case was also reassigned to a new judge which Tarragon argues will cause further delay. *Id.* at ¶ 32. There are claims against Ansonia remaining in the New York action, however, Northland was given an opportunity to amend its complaint to provide specificity and Ansonia now has a pending motion to dismiss under reserve by the State Court Judge. *Id.* at ¶¶ 38-40.

Northland alleges that the Adversary Complaint *verbatim* repeats the allegations and claims already raised in both the Massachusetts and New York state court litigations. *Northland Mot.* at 4. Furthermore, Northland submits that it had to file its proofs of claim in Tarragon's bankruptcy case pursuant to the Court determined bar date. *Northland's Reply Ltr. Dated July 20, 2009 ("Northland Reply")*, 1.

## Discussion

**I.     Abstention**

    **A.     Mandatory Abstention**

Section 1334(c)(1) states:

> (1) Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.
>
> (2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

11 U.S.C. § 1334(c)(1) & (2). Mandatory abstention under Section 1334(c)(2) is appropriate where:

> (1) [T]he proceeding is based on a state law claim or cause of action; (2) the claim or cause of action is "related to" a case under title 11, but does not "arise under" title 11 and does not "arise in" a case under title 11, (3) federal courts would not have jurisdiction over the claim but for its relation to a bankruptcy case; (4) an action "is commenced" in a state forum of appropriate jurisdiction; and (5) the

>action can be "timely adjudicated" in a state forum of appropriate jurisdiction.

*Stoe v. Flaherty*, 436 F.3d 209, 213 (3d Cir. 2006); *Street v. End of the Road Trust*, 386 B.R. 539, 547 (D. Del. 2008); *In re Mid-Atl. Handling Sys.*, 304 B.R. at 121. Here, at oral argument, the parties accepted that the matter is not subject to mandatory abstention and the Court agrees.

### B.    Permissive Abstention

The standard for permissive abstention is a fact-based factor analysis. *See In re Mid-Atl. Handling Sys.*, 304 B.R. at 126 (citing *Balcor/Morristown Ltd. P'ship*, 181 B.R. 781, 793 (D.N.J. 1995)). The factors to be considered are:

> (1) [T]he effect on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (6) the existence of the right to a jury trial; and (7) prejudice to the involuntarily removed defendants.

*Id.* at 126 (citing *In re Donington, Karcher, Salmond, Ronan & Rainone, P.A.*, 194 B.R. 750, 760 (D.N.J. 1996)). Furthermore, the Court must look to the "reality of the controversy, rather than base a decision on superficial features that appear to place it in one category or another." *Balcor*, 181 B.R. at 794.

In the instant matter, factor seven is irrelevant as no removal pursuant to 28 U.S.C. § 1441 nor § 1452 occurred here, instead, Tarragon commenced an entirely new adversary proceeding in this Court rather than removing the pending state court actions. The Court also finds that Northland's suggestion that Tarragon failed to utilize removal procedures is inapposite. Removal is not mandatory. *See* 28 U.S.C. §§ 1441 & 1452. Factor six is inapplicable because the filing of

12

a proof of claim brings a creditor within the equitable jurisdiction of the Bankruptcy Court removing the creditor's right to a jury trial. *See Shubert v. Lucent Techs., Inc. (In re Winstar Communications, Inc.)*, 554 F.3d 382, 406-07 (3d Cir. 2009) (citing *Langenkamp v. Culp*, 498 U.S. 42, 44-45 (1990) (per curiam)) (other citations omitted); *Shared Network Users Group, Inc. v. WorldCom Techs., Inc.*, 309 B.R. 446, 451 (E.D. Pa. 2004) (filing of proof of claim voluntarily subjects creditor to equitable jurisdiction of bankruptcy court and creditor could have instead filed motion for stay relief to continue state court litigation). To date, Northland has not filed a motion for stay relief to continue the state court litigations, however, Northland has filed opposition to the Debtor's post-petition financing motion and also issued a Rule 2004 subpoena to which the Debtor responded with a motion to quash which Northland defended.

Save Counts Sixteen and Seventeen, the remaining counts of the adversary complaint are state law claims, thus, factor two weigh in the favor of Northland. However, the remaining factors weigh in favor of Tarragon. Tarragon argues that adjudication of this adversary proceeding will resolve all issues between the parties including the two state court actions and the proofs of claim allowing for the Debtors' Chapter 11 Plan confirmation. Thus, it is clear that it would be in the best interest of the administration's efficiency. The third factor, the complexity of the state law claims, is not persuasive as breach of contract, breach of implied covenant of good faith and fair dealing, accounting, negligence, and fraud claims are routinely decided by bankruptcy courts. As to the fourth, comity, Tarragon correctly argues that it is not of concern because neither of the cases have progressed to a stage where substantive decisions or extensive discovery has been made in the state courts. Lastly, Tarragon argues that factor five is important because Tarragon cannot confirm a plan

without resolution of Northland's substantial claim; thus, the issues raised in the adversary proceeding are related to the bankruptcy case. The balancing of these factors weighs in favor of Tarragon, thus, Northland's request for permissive abstention is hereby denied.

Northland relies upon *Colorado River Water Conservation Dist. v. United States* in support of its argument for abstention. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976). Northland argues that "parallel proceedings" exist and the factors recited in *Colorado River* are applicable. The Court finds this reliance misplaced. *Colorado River* is not a bankruptcy case and instead is a case where the United States as trustee for certain Indian tribes brought suit against water users. The Supreme Court of the United States determined that the state court had jurisdiction to determine Indian water rights due to highly interdependent relationships. *Id.* at 810, 819. Abstention under bankruptcy law is clearly provided for by 28 U.S.C. § 1334(c) and the relevant case law is applicable here as already discussed above.

### C.    Filing of Proof of Claim

"It is axiomatic that filing a proof of claim triggers the claims allowance process under 11 U.S.C. § 501 *et seq.*, which, by its very nature, is a 'core' proceeding that can arise *only* in a title 11 case." *In re Exide Techs.*, 544 F.3d at 214 (citing *Steinman v. Spencer (In re Argus Group 1700),* 206 B.R. 737, 747-48 (Bankr. E.D. Pa. 1996) ("Debtors' proposition that the filing of a proof of claim in bankruptcy transforms a pre-petition state law claim which was filed in state court before the bankruptcy into a core proceeding is sound.") (emphasis in original). Northland argues that due to the impending bar date, it was forced to file its proofs of claim. However, Northland in its reply to the instant motion concedes that filing of a proof of claim "may result in the ability of the Court

14

to find that it has 'core' jurisdiction." *See Northland Reply*, 1. Northland further argues that state law issues predominate and thus the Court should abstain regardless of the proof of claim. This argument is contrary to the law of the Third Circuit and this Court. *See In re Exide Techs.*, 544 F.3d at 214; *In re Mid-Atlantic Handling Systems LLC*, 304 B.R. 111, 123 (Bankr. D.N.J. 2003).

Finally and most importantly, "one of the 'fundamental purposes of the bankruptcy system is to adjudicate and conciliate all competing claims to a debtor's property in one forum.'" *Brundage v. White (In re Brundage)*, 05-2310 & 05-2406, 2005 U.S. Dist. LEXIS 19574, at * 14 (E.D. Pa. Sep. 9, 2005) *aff'd Brundage v. White (In re Brundage)*, 2007 U.S. App. LEXIS 24892 (3d Cir. Oct. 24, 2007) (citations omitted). *see also McCartney v. Integra Nat'l Bank N.,* 106 F.3d 506, 512 (3d Cir. 1997) ("[B]y centralizing all prebankruptcy civil claims against a debtor in the bankruptcy court, the debtor is granted a 'breathing spell' during which he is relieved of the financial pressures that drove him to bankruptcy. The centralization of all claims in the bankruptcy court also permits the assets of the debtor's estate to be marshaled for distribution to creditors in an orderly and equitable fashion. . . .Debtors would be forced to expend valuable time, energy and resources defending against state court litigation that could be settled directly in the bankruptcy court.") (internal citations omitted). If the motion to dismiss is granted, this cannot occur and the same facts will essentially be argued in three different courts. That does not support judicial economy.

## II.     **"First-Filed" Rule**

The "first-filed" rule provides "in all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it." *EEOC v. Univ. of Pa.*, 850 F.2d 969, 971 (3d. Cir. 1988) *aff'd Univ. of Pa. v. EEOC*, 493 U.S. 182, 187 n.1 (1990) ("counsels the stay or dismissal of

an action that is duplicative of a previously filed suit in another federal court"). The "first-filed" doctrine "does not apply when similar actions are pending concurrently in federal and state court, as the rule 'encourages sound judicial administration and promotes comity amount federal courts of equal rank." *Nihon Tsushin Kabushiki Kaisha v. Davidson*, 595 F. Supp. 2d 363, 368 (D. Del. 2009) (citing *EEOC v. Univ. of Pa.*, 850 F.2d at 971) (other citations omitted). Moreover, the Third Circuit held that the first-filed rule is applicable only in "truly duplicative" proceedings which are actions with the same parties and same issues in both cases. *Siemens Fin. Servs. v. Open Advantage M.R.I. II L.P.*, 2008 U.S. Dist. LEXIS 15623, *8-9 (D.N.J. Feb. 29, 2008) (citing *Kedia v. Jamal*, No. 06-6054, 2007 U.S. Dist. LEXIS 30343, *8 (D.N.J. Apr. 25, 2007)) The same parties are not involved here as the non-debtor party, Ansonia, is not before this Court in the adversary proceeding. However, another court suggests that focusing on the subject matter of the two actions is important not just the same parties and issues. *See Villari Brandes & Kline, P.C. v. Plainfield Specialty Holdings II, Inc.*, 2009 U.S. Dist. LEXIS 54198, *17-18 (E.D. Pa. June 26, 2009) (citing *Shire U.S., Inc. v. Johnson Matthey, Inc.*, 543 F. Supp. 2d 404, 409 (E.D. Pa. 2008)). Nevertheless, the majority of case law suggests that the first-filed rule, regardless of subject matter of the proceedings, is only applicable between federal courts and not with state courts. *See Central States Indus. Supply, Inc. v. McCullough*, 218 F. Supp. 2d 1073, 1092 (N.D. Iowa 2002) (citing *inter alia Hospah Coal Co. v. Chaco Energy Co.,*, 674 F. 2d 1161 (10th Cir. 1982); *Reisman v. Wagoner Funds, Inc.*, 2002 WL 1459384, at *1 (D. Del. June 7, 2002) (surveying decisions where majority held that first-filed rule was applicable to concurrent federal proceedings). The Court finds that the first-filed doctrine is not a basis to grant Northland's motion to dismiss.

**Conclusion**

For the reasons previously stated, the Court hereby denies Northland's motion to dismiss the adversary complaint. The filing of the proofs of claim by Northland subjected it to this Court's jurisdiction and Northland has not sought stay relief to proceed in its state court actions nor has Tarragon removed either or both of those actions. Instead, Tarragon filed an adversary complaint asserting claims against Northland. Northland will have the opportunity to answer and file counterclaims if it chooses.

Allowing this Court to control the litigation and its timing is critical to reaching a resolution expeditiously in order to accommodate plan confirmation and satisfaction of creditors' claims, including those of Northland. There are two counts of the instant complaint that are clearly "core" issues, while the other counts are "related to" but could have a conceivable effect on the bankruptcy case due to impact on the plan and its confirmation. This Court regularly adjudicates state contract law claims which are the crux of the arguments raised here. Thus, the Court will not abstain from hearing this matter nor will it dismiss based upon the "first-filed" doctrine. Northland's motion to dismiss is hereby denied.  An Order in conformance with this Opinion is attached hereto.

s/    *Donald H. Steckroth*

DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE